# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 15-860V
(Not to be published)

| | | |
|---|---|---|
| REGINA TODD, | * | |
| | * | |
| Petitioner, | * | Filed: August 31, 2020 |
| | * | |
| v. | * | Attorney's Fees and Costs; Expert |
| | * | Costs; Petitioner's Costs |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |

*Jessica A. Olins*, Maglio Christopher & Toale, PA, WA, for Petitioner.

*Debra A. Filteau Begley*, U.S. Dep't of Justice, Washington, DC, for Respondent.

**DECISION GRANTING FINAL AWARD OF ATTORNEY'S FEES AND COSTS**[1]

On August 12, 2015, Regina Todd filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program")[2] alleging that the influenza ("flu") vaccine she received on September 17, 2012, caused her to experience a neuropathy. Petition (ECF No. 1); Rule 4(c) Report at 1, filed Jan. 4, 2016 (ECF No. 22). A two-day entitlement hearing was held on March 4-5, 2019, and I issued a decision denying entitlement to compensation on January

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). This means that the Decision will be available to anyone with access to the internet. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

8, 2020. Entitlement Decision, filed Jan. 8, 2020 (ECF No. 81). That Decision was not appealed.

Petitioner has now filed a motion for a final award of attorney's fees and costs, seeking an award for all work performed and costs incurred in this case. Motion for Attorney's Fees and Costs, filed May 6, 2020 (ECF No. 88) ("Fees App."). Petitioner requests a final award of $201,068.51—$171,774.40 in attorney's fees, plus $29,294.11 in costs—for the work of five attorneys (Ms. Jessica Olins, Esq.; Dr. Amber Wilson, Esq.; Ms. Anne Toale, Esq.; Mr. Isaiah Kalinowski, Esq.; and Mr. Joseph Vuckovich, Esq.) as well as the supportive work of six paralegals. Ex. 90, filed on May 6, 2020 (ECF No. 88-1) at 50. The costs requested include legal research charges, medical record retrieval, travel, expert fees, and mailing expenses. Ex. 91, filed May 6, 2020 (ECF No. 88-2). Petitioner also requests $779.11 for costs she personally incurred. Fees App. at 2; General Order No. 9, filed as Ex. 92 on May 6, 2020 (ECF No. 88-3). Petitioner's personal costs include travel expenses and meals related to the entitlement hearing. *Id.*

Respondent reacted to the fees request on May 18, 2020. *See* Response, dated May 18, 2020 (ECF No. 89). He indicates in his Response that he is satisfied that the statutory requirements for an attorney's fees and costs award are met in this case, and otherwise defers to my discretion the calculation of a proper amount to be awarded. *Id.* at 2, 4. Petitioner thereafter filed a Reply in which she argued Respondent unduly burdens the Court and prejudices Petitioner by effectively eliminating her ability to remedy any problems that may exist in the request. Reply, filed May 19, 2020 (ECF No. 90).

## ANALYSIS

### I. Petitioner's Claim had Reasonable Basis

Under the Vaccine Act, a special master may award fees and costs to an unsuccessful petitioner if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g., Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, slip op. at 5 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). In short, the claim's reasonable basis must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 19-1596, slip. op. at 9–10 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the *claim*—counsel's conduct is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. Reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation).

2

The standard for reasonable basis is lesser (and inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (Fed. Cl. 2019). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).[3] The Court of Federal Claims has affirmed that the "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017).

Although it did not ultimately succeed, Petitioner's claim had sufficient objective basis to entitle her to a fees and costs award. *See, e.g.*, *P.M. v. Sec'y of Health & Hum. Servs.*, No. 16-949V, 2020 WL 1130353, at *1 (Fed. Cl. Spec. Mstr. Feb. 5, 2020). Claims that the flu vaccine can cause neuropathy have scientific legitimacy, and thus are not comparable to the kinds of claims (like those asserting autism as a vaccine injury) that have been discredited through repeated consideration. *See, e.g.*, *Knorr v. Sec'y of Health & Hum. Servs.*, No. 15-1169V, 2018 WL 6991548 (Fed. Cl. Spec. Mstr. Dec. 7, 2018). This claim also was based on undisputed evidence of a neuropathic injury and bulwarked by an expert opinion that was not frivolous or obviously poorly reasoned, even if I ultimately did not find it persuasive. There was enough evidence in the record to support bringing the claim, and Respondent for his part does not otherwise contest reasonable basis. Accordingly, a final award of fees and costs in this matter is appropriate.

## II.   Calculation of Fees

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a

---

[3] *See also Chuisano*, 116 Fed. Cl. at 285 (cautioning against rigid rules or criteria for reasonable basis because they would subvert the discretion of special masters and stating that an amorphous definition of reasonable basis is consistent with the Vaccine Act as a whole).

substantial difference in rates (the *Davis* exception). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests the following rates for her attorneys and support staff, based on the years work was performed:

|  | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|
| **Jessica Olins, Esq.** | - | - | - | - | - | $225 |
| **Amber Wilson, Esq.** | $225 | $275 | $290 | $308 | $323 | $345 |
| **Anne Toale, Esq.** | - | - | - | $402 | - | - |
| **Isaiah Kalinowski, Esq.** | - | - | - | $368 | - | - |
| **Joseph Vuckovich, Esq.** | - | - | - | $300 | $315 | $345 |
| **Emily Monahan (paralegal)** | - | - | - | $148 | $154 | $160 |
| **Mandy Houston (paralegal)** | - | - | - | - | $145 | - |
| **Brittany Shalla (paralegal)** | $145 | - | - | - | - | - |

4

| Jennifer Gutierrez (paralegal) | $105 | $105, $135 | $145 | $148 | - | - |
| Kimberly Dutra (paralegal) | $135 | - | - | - | - | - |
| Tabitha Stone (paralegal) | $135 | $135 | - | - | - | - |

Ex. 90 at 28, 50.

The attorneys practicing at Maglio Christopher & Toale, located in Sarasota, Florida, Washington, DC, and Seattle, WA, have repeatedly been found to be "in-forum," and therefore are entitled to the forum rates utilized by the Office of Special Masters.[4] *See Freyre v. Sec'y of Health & Hum. Servs.*, No. 16-866V, 2020 WL 3619506, at *2 (Fed. Cl. Spec. Mstr. June 18, 2020) (awarding in-forum rates to an attorney practicing in the Sarasota, FL office); *Monterroso v. Sec'y of Health & Hum. Servs.*, No. 17-1310V, 2019 WL 7494982, at *2 (Fed. Cl. Spec. Mstr. Dec. 9, 2019) (awarding in-forum rates to an attorney practicing in the Seattle, WA office).

Upon consideration, given the information proffered by Petitioner herein about the attorneys and support staff of Maglio Christopher & Toale, along with their overall experience, the quality of their work, and their reputation in the legal community, I find that the rates requested are reasonable for the work completed herein and do not require reduction. I also find, after review of the billing records, that the work performed on the matter was reasonably incurred, and therefore make no reductions to the time billed. Accordingly, all time requested for attorney or paralegal work performed on this matter shall be reimbursed.

### III. Calculation of Attorney Costs

Petitioner also requests an award of $29,294.11 for costs incurred since the claim's filing, including legal research charges, medical record retrieval, travel, expert fees, and mailing expenses. Ex. 91. Such costs are typical in Program cases, Respondent does not otherwise object to their reasonableness, and I therefore award them as requested. I find, however, that the requested rate of compensation for Petitioner's neurology expert, Dr. Enrique Aradillas-Lopez, is

---

[4] *See* Office of Special Masters Attorneys' Hourly Rate Fee Schedule: 2019-2020, https://www.uscfc.uscourts.gov/node/2914 (last visited on Aug. 11, 2020).

unreasonable in light of his overall experience testifying in the Vaccine Program and the work performed in this matter.

The reasonableness standards applied to attorney's fees also bear on fees requested for expert testimony. *See Frantz v Sec'y of Health & Hum. Servs.*, 146 Fed. Cl. 137, 145 (2019); *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 206 (2009) (citing *Baker v. Sec'y of the Dep't of Health & Hum. Servs.*, No. 99-653V, 2005 WL 589431, at *1 (Fed. Cl. Spec. Mstr. Feb. 24, 2005)). When considering whether an expert's requested rates are reasonable, a special master may consider the expert's area of expertise, education, training, nature and complexity of the material provided for review, and "any other factor likely to assist the [court] in balancing the various interests implicated by the Vaccine Act." *See Frantz*, 146 Fed. Cl. at 145 (internal quotations and alterations omitted) (citing *Wilcox v. Sec'y of the Dep't of Health & Hum. Servs.*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997)).

Special masters "are also entitled to use their prior experience in reviewing fee applications" in making reasonableness determinations for both attorney's and expert fees. *Frantz*, 146 Fed. Cl. at 145 (citing *Saxton v. Sec'y of the Dep't of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993)). Further, reasonableness determinations regarding an expert's requested fees are made on a case-by-case basis and may therefore vary depending on the nature of the case, the expert's experience, and the quality of work performed in the matter. *See Lewis v. Sec'y of Health & Hum. Servs.*, No. 15-907V, --- Fed. Cl. --- 2020 WL 4433775, at *4 (Fed. Cl. Spec. Mstr. July 15, 2020) (citing *Frantz*, 146 Fed. Cl. at 145). I am not bound by the rates previously awarded to an expert by other special masters for these same reasons, even though I may reasonably take into account such prior determinations. *Lewis*, 2020 WL 4433775, at *4–5.

In this matter, Petitioner requests reimbursement at a rate of $600 per hour for thirty-seven hours of work performed by Dr. Aradillas-Lopez—an amount totaling $22,200.00. Ex. 91 at 2–3, 51–52, 91, 111, 115. She notes that this rate of compensation has been awarded in other Program cases. *See, e.g.*, *Blender v. Sec'y of Health & Hum. Servs.*, No. 16-1308V, slip op. at 6 (Fed. Cl. Spec. Mstr. Aug. 5, 2020) (citing *Anthony v. Sec'y of Health & Hum. Servs.*, No. 15-636V, 2017 WL 4898932, at *2 (Fed. Cl. Spec. Mstr. Oct. 6, 2017) (awarding compensation for work performed by Dr. Aradillas-Lopez at a rate of $600 per hour)). Petitioner does not otherwise provide support for the reasonableness of the requested rate herein.

Having heard his testimony in this manner, I conclude that Dr. Aradillas-Lopez was qualified to testify within the Program, and I found his testimony generally helpful in resolving the case. But I do not concur that the rate of $600 per hour is appropriate, because (at the present time) Dr. Aradillas-Lopez is not amongst those experts who should command the highest rates for Vaccine Program work. At the entitlement hearing, Dr. Aradillas-Lopez indicated that he has been involved in only four Program cases, including this one. Tr. at 40. Expert witnesses with significantly more experience are often compensated at lower rates than is requested by Dr. Aradillas-Lopez. *See Maciel v. Sec'y of Health & Hum. Servs.*, No. 15-362V, 2019 WL 6249369

(Fed. Cl. Spec. Mstr. Oct. 17, 2019) (awarding $400 and $450 per hour for work performed by an expert who has testified extensively in the Program); *Palattao v. Sec'y of Health & Hum. Servs.*, No. 13-591V, 2019 WL 6119418, at *4 (Fed. Cl. Spec. Mstr. Sept. 20, 2019) (awarding $500 per hour for work performed by an expert who has a significant amount of experience testifying in the Program); *Schultz v. Sec'y of Health & Hum. Servs.*, No. 16-539V, 2018 WL 1835104, at *4 (Fed. Cl. Spec. Mstr. Feb. 16, 2018) (awarding $500 per hour for work completed by an expert who is frequently called to testify in Program cases).

Petitioner also has not provided sufficient justification for such a high hourly rate. Neither of the two cited cases involving Dr. Aradillas-Lopez's prior work on Vaccine Act cases includes a reasoned analysis outlining *why* the requested rate was deemed reasonable. By conducting a closer analysis of the requested rates in light of the circumstances presented in this matter—specifically, the nature of the claim, Dr. Aradillas-Lopez's limited experience testifying in the Program, and the rates of compensation for experts with similar qualifications and experience—I find that Petitioner has not met her burden in establishing the reasonableness of the requested rate of $600 per hour. Instead, I award a rate of $450 per hour, resulting in a total deduction of $5,550.00.

I acknowledge in ruling as I do that experts may increasingly seek rate awards exceeding $500, and thus in excess of what has been "traditionally" treated as a ceiling for the most experienced or credentialed experts. Such requests should be entertained in the Vaccine Program, and qualified experts should be compensated at levels consistent with what they could expect to command outside of the Program. But in this case, a $600 hourly rate was not justified (although it could well be defended if Dr. Aradillas-Lopez testifies again in a subsequent matter).

### IV. Petitioner's Costs

Petitioner submitted a statement in compliance with General Order No. 9 stating that she personally incurred costs related to attending the entitlement hearing in the amount of $779.11. Ex. 92. These costs were incurred between March 2-5, 2019 and reflect transportation, meals, and baggage charges. *Id.* The entitlement hearing in this matter, however, took place on March 4-5. Therefore, the only necessary days for the parties to be present in Washington, DC were March 3-5, 2019.

The decision to deny travel costs where a petitioner or petitioner's counsel traveled unnecessarily early to a hearing in advance of the argument has been upheld. *See Gramza v. Sec'y of Health & Hum. Servs.*, No. 15-247V, 2017 WL 3574794, at *5 (Fed. Cl. Spec. Mstr. June 28, 2017) (declining to reimburse full amount of costs personally incurred by the petitioner when she and her family traveled to Washington, DC three days prior to the scheduled hearing); *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 732 (2011) (upholding special master's determination that it was unnecessary for petitioner's counsel to travel two days before the argument, despite traveling from a different time zone). I find that these travel-related costs

were similarly inappropriate. The Program is not responsible for reimbursing an extended visit to Washington, DC, for counsel or petitioners themselves, regardless of the distance the parties must travel.

Accordingly, I limit any travel-associated costs to be awarded to those incurred between March 3-5. This results in a total deduction of $135.97.[5]

## CONCLUSION

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of a final fees award, and based on the foregoing, I **GRANT IN PART** Petitioner's Motion for Attorney's Fees and Costs. I therefore award a total of **$195,518.51**—representing —$171,774.40 in attorney's fees and $23,744.11 in costs—in the form of a check payable to Petitioner and Petitioner's counsel, Maglio Christopher & Toale, PA. Additionally, I award a total of **$643.14**, representing costs personally incurred by Petitioner, in the form of a check payable to Petitioner and Petitioner's counsel. Both checks are to be forwarded to Maglio Christopher & Toale, PA, 1605 Main Street, Suite 710, Sarasota, Florida 34236.

| | **Attorney's Fees and Costs** | | |
|---|---|---|---|
| | **Requested** | **Awarded** | **Difference** |
| Attorney's Fees | $171,774.40 | $171,774.40 | $0.00 |
| Attorney Costs | $29,294.11 | $23,744.11 | $5,550.00 |
| Total | **$201,068.51** | **$195,518.51** | **$5,550.00** |

| | **Petitioner's Costs** | | |
|---|---|---|---|
| | **Requested** | **Awarded** | **Difference** |
| Petitioner Costs | $779.11 | $643.14 | $135.97 |

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the

---

[5] This reduction accounts for meal expenses incurred on March 2, 2019. Receipts from La Tasca, Bojangles', and Panera Bread were used to calculate the necessary reduction. *See* Ex. 92 at 6, 8.

court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[6]

**IT IS SO ORDERED.**

s/ Brian H. Corcoran  
Brian H. Corcoran  
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.